# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DNIB UNWIND, INC.<br>(f/k/a BIND THERAPEUTICS, INC.),[1]<br><br>        Post-Effective Date Debtor. | Chapter 11<br><br>Case No. 16-11084 (BLS) |
| B.E. CAPITAL MANAGEMENT FUND LP,<br>on behalf of itself and all others similarly<br>situated,<br><br>        Plaintiff,<br><br>        v.<br><br>GEOFFREY L. BERMAN, in his capacity as<br>Trustee of the Liquidating Trust of DNIB<br>Unwind, Inc. (f/k/a Bind Therapeutics, Inc.),<br><br>        Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF B.E. CAPITAL MANAGEMENT'S
EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION AND, IF SUCH RELIEF IS DENIED,
<u>A STAY PENDING APPEAL PURSUANT TO RULE 8005</u>**

      Plaintiff B.E. Capital Management Fund LP, on behalf of itself and a class of all other similarly situated persons, by and through its undersigned counsel, pursuant to 11 U.S.C. §§ 105 and 1142 and Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure,[2] hereby files this memorandum of law in support of its motion for a temporary restraining order and preliminary

---

[1]     The Post-Effective Date Debtor's address is c/o Development Specialists, Inc., 333 South Grand Avenue, Suite 4070, Los Angeles, California 90071. The last four digits of its Federal tax ID number are 6148.

[2]     Rule 7001(7) provides that injunctive relief must be sought by commencing an adversary proceeding. Rule 7065 of the Federal Rules of Bankruptcy Procedure makes Fed. R. Civ. P. 75 applicable to adversary proceedings.

injunction prohibiting Geoffrey L. Berman, in his capacity as Trustee of the Liquidating Trust of DNIB Unwind, Inc. (f/k/a Bind Therapeutics, Inc.) (the "Trustee") from (a) conditioning further Plan distributions on receipt of completed W-9 and Equity Distribution Forms and (b) making any further Plan distributions until the Contested Matter has been decided by final court order. In the case that the Court denies the injunctive relief sought, B.E. Capital seeks a stay pending appeal pursuant to Rule 8005, without a bond being required. In support hereof, B.E. Capital avers as follows:

## RELIEF REQUESTED

1. By this Motion, Intertek seeks injunctive relief against the Trustee to preserve the *status quo* pending B.E. Capital's appeal of this Court's *Memorandum Order* (the "Order") *Denying B.E. Capital Fund LP's Motion for Determination that the Trustee's Conditioning of Distributions to Shareholders on their Submission of Equity Distribution Form Violates the Plan, or Alternatively, is an Impermissible Plan Modification* (the "Motion"). To the extent the Court denies the injunctive relief sought, B.E. Capital seeks a stay pending appeal pursuant to Bankruptcy Rule 8005.

## INTRODUCTION

2. On February 13, 2017, the Trustee charged with winding up the Debtors' estates in accordance with the Plan[3] and Confirmation Order announced by way of Certificate of Service (the "Shareholder Notice") filed at docket number 590 that no Distribution Record Date shareholder would receive any further Plan distributions unless they and their respective nominees submit a completed W-9 and the Equity Distribution Form to the Trustee. The Trustee's self-

---

[3] Capitalized terms used herein but not otherwise defined shall take the meanings ascribed to them in the Motion. The filing of the Motion created the "Contested Matter."

2

imposed deadline (the "<u>Distribution Cut-Off</u>") for submitting those Forms—August 7, 2017—is fast approaching. The very legality of conditioning future distributions on receipt of those forms has been challenged and is the subject of a pending appeal.

3. B.E. Capital therefore is compelled to seek injunctive relief from this Court to prevent distributions from being made upon expiration of the Distribution Cut-Off while the propriety of the Trustee's demands and proposed distribution mechanism are under judicial review. As it presently stands, the Trustee's authority in this regard is far from certain, and injunctive relief must issue to prevent irreparable harm to DNIB shareholders entitled to their pro-rata share of distributions under the Plan. The Trustee has advised this Court he will not make future distributions through the Debtor's transfer agent—in violation of the Plan—and that he will not make any distribution to Distribution Record Date shareholders unless they turn in certain information not contemplated by the Plan by the Distribution Cut-Off. If the Trustee gets his way, it will set bad precedent by putting into question the finality of confirmed plans and also will result in a distribution disaster of epic proportions. This Court should intervene and not allow these scenarios from materializing.

## **JURISDICTION**

4. This Court has jurisdiction to hear this matter and fashion the requested relief pursuant to 11 U.S.C. § 105(a), which provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

5. Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware, Defendant states it does not consent to the entry of final orders or judgments by the Court if it is determined that the Court,

absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## STATEMENT OF FACTS

6. On the date hereof, B.E. Capital commenced an adversary proceeding by filing a Complaint seeking injunctive relief against the Trustee.

7. The background relating to the commencement of the adversary proceeding and the relief requested herein is set forth in the Complaint and incorporated herein by reference. Additional reading material related to this motion is available in the main bankruptcy case at docket numbers, *inter alia*, 615, 627, 642, 661, 677, 680 and 689, and is incorporated herein.

8. By Order dated July 13, 2017, the Court denied the Motion.

9. On July 14, 2017, B.E. Capital took appeal from the Order [D.I. 696].

## ARGUMENT

### A)    **B.E. Capital is Entitled to Injunctive Relief**

10. The Court should enjoin the Trustee from, either directly or indirectly, giving effect to the Distribution Cut-Off and making any further Plan distributions until the Contested Matter has been resolved by final, unappealable order. B.E. Capital brings this motion to prevent irreparable harm to itself and other Distribution Record Date shareholders should the Trustee be permitted to circumvent the Debtor's transfer agent in making future distribution and disenfranchise Distribution Record Date shareholders that, for whatever reason, are unable to fully comply with the Trustee's requirement, which violates the plan, that they complete W-9 and Equity Distribution Forms by August 7, 2017. 11 U.S.C. § 105(a) permits this Court to issue injunctive relief to prevent the Trustee from violating this Court's Confirmation Order, which approved the

Plan and Trust Agreement, and the Bankruptcy Code's requirement that creditors within the same class be treated equally.

11. To obtain a preliminary injunction under section 105 and Rule 65, made applicable by Rule 7065, the party seeking the injunction must show that "(1) they are likely to experience irreparable harm without an injunction and (2) that they are reasonably likely to succeed on the merits." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000). If those two elements are met, "the court should also examine the likelihood of irreparable harm to the nonmoving party and whether the injunction serves the public interest." *Id*. The applicable standards for issuance of a temporary restraining order mirror the standards governing issuance of a preliminary injunction. *Olde Disc. Corp. v. Tupman*, 805 F. Supp. 1130, 1135 (D. Del. 1992), aff'd, 1 F.3d 202 (3d Cir 1993).

12. The standards for temporary restraining and preliminary injunction easily are met here.

      **a. Absent an Injunction, DNIB Distribution Record Date Shareholders Such as B.E. Capital Will Suffer Irreparable Harm**

13. The irreparable harm prong is met where the party shows that it "will experience harm that cannot adequately be compensated after the fact by monetary damages." *Adams*, 204 F.3d at 484–5. Monetary damages cannot adequately compensate a party where there is "something uniquely threatening about the particular loss of money." *Id*. at 484. This element is met here.

14. For the reasons set forth above and in the Complaint, if the Trustee is permitted to condition future Plan distributions on receipt of W-9 and Equity Distribution Forms by the Distribution Cut-Off, he will cause a substantial number of Distribution Record Date shareholders

to forfeit, unknowingly and against their will, future Plan distributions to which they legally are entitled. The Trustee has admitted as much.

15. What makes this loss of money particularly threatening here is that, once August 7 has passed and the funds are out of the door, there is no prospect of clawing the distributions back into the estate and distributing them to the rightful recipients should it later be determined that the Trustee's actions were, in fact, in contravention of the Plan documents and the Bankruptcy Code. Just ask the former truck drivers for Jevic Transportation.

### b. There is a Reasonable Likelihood that B.E. Capital will prevail on the Merits in the Contested Matter

16. As to the second prong, there is a reasonable likelihood that Plaintiff will prevail on the merits in the Contested Matter. In connection with the Contested Matter, Plaintiff presented evidence that, among other things,

   a) 26 C.F.R. § 1.671–4(a), the subsection which the Trustee is relying upon to condition distributions on submission of a W-9 Form, does not require the Trustee to collect W-9 forms from holders of DNIB stock in street name to satisfy the Trust's tax reporting obligations;

   b) Other liquidating grantor trusts that are structured in a manner virtually identical to the DNIB Trust do not require W-9 forms to satisfy their tax reporting obligations;

   c) The accountant who is providing the Trustee with tax advice is not a tax accountant; and

   d) The Trustee has failed to explain the change in tax law between when he made the Initial Equity Distribution, which occurred smoothly without the

Trustee collecting W-9 Forms, and future Plan distributions, which, the Trustee contends, suddenly require them.

e) The Trustee has failed to explain why it will not use either of the two options permitted by the Internal Revenue Code by which he can comply with his taxing obligations without collecting W-9 Forms from the grantor-beneficiaries.[4]

17. The Court's denial of the Motion, while no doubt encouraging to the Trustee, does little to diminish the reasonable likelihood of B.E. Capital ultimately prevailing on the merits in the Contested Matter. The Order is on appeal, and there is a reasonable likelihood that the appellate courts may differ with this Court's holding. The Order, among other things,

a) Fails to address how the Trustee's proposed manual distribution mechanism does not violate the Plan which *requires* that distributions to beneficial interest holders be made through the Debtor's transfer agent. The Trustee is not permitted to make a "judgment" call as to the "mechanics of Trust distributions."[5] The distribution mechanics are prescribed by the Plan, Confirmation Order, and Trust Agreement.

b) Fails to address how the Trustee's disparate treatment of members of the same class of creditors does not violate the Bankruptcy Code.

---

[4] As B.E. Capital previously pointed out, the Trustee can satisfy tax reporting requirements by complying with 26 C.F.R. § 1.671-4(b)(3), an optional reporting method expressly permitted by 26 C.F.R. § 1.671-4(a) for trusts treated as owned by two or more grantor-beneficiaries. Alternatively, he can satisfy tax reporting requirements under 26 C.F.R. § 1.671-4(a) by relying on the Form W-9 provided by the Debtor's transfer agent, as other liquidating trusts do and have done. Neither reporting method requires the collection of Form W-9s from trust beneficiaries.

[5] Order ¶ 8.

c)   Fails to address how the Trustee's request for the Equity Distribution Form is "reasonabl[e]"[6] and not an abuse of "discretion"[7] given that B.E. Capital has demonstrated that (a) there are ways for the Trustee to comply with his tax reporting requirements without having to collect the W-9 and Equity Distribution Forms and (b) as a result of the Trustee's demands–which, btw, are wholly arbitrary, given he was able to make the Initial Equity Distribution without them without a problem–a significant number of Distribution Record Date shareholders will be deprived of the distribution to which they are entitled.

d)   Misconstrues the factual record presented at the hearing on the Motion. The Order states that the Trustee's demands "impose at most a modest burden on shareholders/beneficiaries."[8] This holding is contrary to the evidence presented at the hearing, where Mr. Braziel, B.E. Capital's managing partner, testified at length about the enormous difficulties a significant number of beneficial interest holders, including himself, encountered in complying with the document requests, the confusion among nominees as to how to complete the Equity Distribution Form, the outright refusal of some nominees to complete that form, and the lack of notice to a substantial number of Distribution Record Date shareholders of

---

[6]   Liquidating Trust Agreement, Section 4.1(f).

[7]   Order ¶ 8.

[8]   Order ¶ 8. This holding also is inconsistent with several letter responses filed on the Court's docket by shareholders sharing the difficulties they encountered with complying with the Trustee's document requests. As counsel for B.E. Capital pointed out to the Court at the hearing, several shareholders had dialed in to attend the hearing telephonically intending to voice their problems with getting their nominees to complete the Equity Distribution Form. The Court declined to hear from them.

the Trustee's form requirement. The Trustee himself admitted that it is unlikely all Distribution Record Date shareholders will comply with his form requirement–and surely the reason is not that they don't want their fair share of the distribution. These difficulties and shareholder mass-disenfranchisement hardly constitute a "modest burden."

The foregoing is solely for illustrative purposes, and B.E. Capital reserves the right to raise further and other issues with the Order in connection with the appeal.

### c. The Balance of Hardships Tips in B.E. Capital's Favor

18.  The balance of hardship completely favors Plaintiff and the putative class. There is no conceivable irreparable harm the Trustee could suffer from being enjoined from enforcing his Distribution Cut-Off or delaying future Plan distributions until the Contested Matter has been decided. To the contrary, the Trustee only stands to benefit from a final decision: If it is in his favor, he can sleep soundly knowing that his unorthodox distribution mechanism has judicial blessing. If it is not in his favor, he can be thankful for being prevented from violating the Plan and Bankruptcy Code. The potential hardship to Plaintiff and the putative class, by contrast, is monetarily significant and virtually irreversible.

### d. The Injunction Serves in the Public Interest

19.  The public interest prong also weighs in B.E. Capital's favor. There can be no dispute that the public interest is served by ensuring that the Bankruptcy Code, confirmed plans, and court orders have the force of law and cannot simply be modified by filing a certificate of service without any traceable justification or accountability. The universe of the Trustee's justification for the Distribution Cut-Off and conditioning further Plan distributions on receipt of W-9 and Equity Distribution Forms thus far is "my accountant told me so" and arguments by his

counsel. Neither justification deserves any deference. *See*, *e.g.*, *Comm. of Equity Sec. Holders of Fed.-Mogul Corp. v. Official Comm. of Unsecured Creditors* (*In re Fed. Mogul-Glob., Inc.*), 348 F.3d 390, 406 (3d Cir. 2003) ("arguments by counsel cannot provide factual support for a trial court's findings") (citing to *United States v. Rose*, 104 F.3d 1408, 1416 (1st Cir. 1997) ("Argument by counsel is not evidence.")); *Limerick Ecology Action, Inc. v. United States Nuclear Regulatory Com.*, 869 F.2d 719, 739 (3d Cir. 1989) ("argument by counsel cannot take the place of an agency's statement of reasons or findings") (internal citation and quotation omitted). Public interest is best served by providing transparency and ensuring the integrity of the adjudicative process. The injunction therefore clearly is in the public interest.

### B) **No Bond Should be Imposed**

20. B.E. Capital respectfully submits that no bond must be imposed as a condition of the issuance of an injunction, because there is no risk of monetary loss to the Trustee should B.E. Capital not prevail in the Contested Matter. The purpose of Rule 65(c)'s bond provision is to compensate a party that has been wrongfully enjoined for any monetary loss occasioned by the injunction. *See Bd. of Educ. v. F.C. ex rel. R.C.*, 2 F. Supp. 2d 637, 646 (D.N.J. 1998). It is hard to conceive how the Trustee could suffer any monetary damages as a result of being temporarily enjoined from making a Plan distribution. The posting of a bond, therefore, should not be required. *Cf. Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988) (holding that a district court's not requiring a party who successfully sought an injunction to post a bond did not constitute error where there was "no risk of monetary loss to the defendant").

21. To the extent the Court deems the posting of a bond appropriate, B.E. Capital requests that the bond amount be nominal.

### C) If the Court Denies the Relief Requested, B.E. Capital Seeks a Stay Pending Appeal Pursuant to Rule 8005

22. For the same reason set forth above, a stay pending appeal would be warranted if the Court denies the injunctive relief requested B.E. Capital. A bond pending appeal, however, should not be required under the circumstances here. A bond is not mandated by Rule 8005, and the Court may issue a stay without a bond where a bond would serve no purpose. *See, e.g.*, *Official Comm. of Equity Sec. Holders v. Finova Grp. Inc.* (*In re Finova Grp. Inc.*), No. 07-480-JJF, 2007 U.S. Dist. LEXIS 80577, at *6 (D. Del. Oct. 31, 2007) ("*Finova*") (declining to condition a stay pending appeal on posting of a bond where it was unlikely the stay would last more than 90 days and "no substantial harm" would come to the party stayed). An appellate bond protects an appellee from costs it incurs as a result of stay, including the possibility that the bankruptcy case assets will lose value while the appeal is pending. *See In re Sphere Holding Corp.*, 162 B.R. 639, 644 (E.D.N.Y. 1994). That is not a risk here. The Trustee is holding the funds and, as such, they are secure and—in this financial environment—assuredly not losing interest. *See Finova*, 2007 U.S. Dist. LEXIS 80577, at *4 (D. Del. Oct. 31, 2007) ("[T]he disputed funds are earning interest, and therefore, the Court concludes that the distributees of the funds will not suffer substantial harm from an extension of the stay."). This state of affairs, akin to an escrow arrangement, preserves the status quo and protects all parties. *See Wells Fargo Bank, N.A. v. ESM Fund I, LP*, No. 10-CV-7332, 2012 WL 3023985, at *3 (S.D.N.Y. July 24, 2012) ("In contrast, maintaining the status quo and holding the funds in escrow poses no risk—to any party—that the funds will not be distributed to them as required once this case reaches a final disposition."); *Life Ins. Co. of N. Am. v. Camm*, No. 402-CV-0106, 2007 WL 2492384, at *2 (S.D. Ind. Aug. 29, 2007) (in interpleader case, granting stay pending appeal without requiring security from movant because although stay would delay the distribution of funds, "the funds are safe and earning interest"). Because there is

no risk that the trust funds will lose value, issuing a stay without requiring a bond is the simplest and fairest way to preserve the status quo.

## CONCLUSION

Because all four factors favor B.E. Capital, this Court should issue a temporary restraining and preliminary injunction preventing the Trustee from (a) conditioning further Plan distributions on receipt of completed W-9 and Equity Distribution Forms and (b) making any further Plan distributions until the Contested Matter has been decided by final court order. Alternatively, B.E. Capital seeks a stay of the foregoing pending outcome of the appeal.

Respectfully submitted,

Dated: June 14, 2017
       Wilmington, Delaware

KLEIN LLC

*/s/ Julia Klein*
Julia B. Klein (DE 5198)
919 North Market Street
Suite 600
Wilmington, Delaware 19801
(302) 438-0456
klein@kleinllc.com

*Counsel for B.E. Capital Management Fund LP and the Putative Class*